# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : |
| v. | : CRIMINAL DOCKET NO.: 16-088 |
| | : |
| | : |
| MOHAMMED JABATEH | : |

## RESPONSE TO THE COURT ORDERS OF JANUARY 24, 2018 AND FEBRUARY 6, 2018

The defendant, Mohammed Jabateh was found guilty by a jury on October 18, 2017 of Counts 1 and 2, 18 U.S.C. §1546(a), Fraud in Immigration and Counts 3 and 4, 18 U.S.C. § 1621(1), Perjury. This Court issued two Orders - January 24, 2018 and February 6, 2018 - directing that the following questions be addressed by Counsel:

**I.  JANUARY 24, 2018; QUESTION 1:**

**Whether Section 2J1.3(c)(2010) applies in determining Defendant's base offense level for Counts 3 and 4, and if it does, how 2J1.3(c) affects the applicable Guidelines, see, e.g., U.S. v. Knight, 700 F.3d 59 (3d Cir. 2012).**

Guideline, Section 2J1.3 is the guideline applicable to perjury offenses and states the following:

    (a)  Base Offense Level:  14

    (b)  Specific Offense Characteristics

       . . .

    (c)  Cross Reference

> (i) If the offense involved perjury . . . in respect to a criminal offense, apply 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above.

In *U.S. v. Knight* the defendant was convicted of perjury for lying about her involvement as an accessory to the murder of a patient in a hospital at which she was employed. The "criminal offense" to which Knight's perjury related to, and the application of Guideline 2J1.3(c), was clear and unambiguous; a plot to murder a patient in a hospital at which Knight was employed. In *U.S. v. Jabateh* the "criminal offense" to which the perjury relates to, and the application of Guideline 2J1.3(c), is immigration fraud. The perjury convictions in Mr. Jabateh's case are not "in respect to" crimes triggering the application of 2X1.3's accessory liability. In this case, the ten (10) crimes[1] in the indictment are alleged to have been committed by the Defendant, over a span of four (4) years, in the early to mid 1990's. The motive and purpose of the perjury was for the sole purpose of gaining immigration status. Furthermore, the jury verdict in this case is a general verdict of guilty as to the two counts of perjury and it is not specific as to which "criminal offense", if any, alleged in the indictment is, or are, the underlying offense, or offenses.

**II.    JANUARY 24, 2018; QUESTION 2:**

> **Whether: (a) I may, in determining whether to impose an upward departure from the Sentencing Guidelines, consider Defendant's commission of genocidal acts that form the basis of his convictions under 18 U.S.C. Sections 1546(a) and 1621; and (b) I should impose an upward departure from the Guidelines pursuant to USSG Sections 5K2.0, 5K2.7, 5K2.8, or 5K2.9 (2010). The parties shall address whether and how the answers to these questions are affected by whether I sentence Defendant pursuant to USSG Section 2J1.3(a)(2010) or Section 2J1.3(c).**

---

[1] The ten (10) crimes are charged in the Indictment are: (1) the murder of civilian noncombatants (2) the sexual enslavement of women (3) the public raping of women (4) the maiming of civilian noncombatants (5) the torturing of civilian noncombatants (6) the enslavement of civilian noncombatants (7) the conscription of child soldiers (8) the execution of prisoners of war (9) the desecration and mutilation of corpses; and (10) the killing of any person because of race, religion, nationality, ethnic origin or political opinion.

In determining whether to impose an upward departure from the Sentencing Guidelines the Court may not consider the commission of genocidal acts that form the basis of the convictions under 18 U.S.C. Sections 1546(a) and 1621 if the Court finds that conduct has not been proven by a preponderance of the evidence. *U.S. v. Watts*, 519 U.S. 148, 149-54 (1997). The commission of genocidal acts were not proven by a preponderance of the evidence at trial and the Court should not impose an upward departure under U.S.S.G. Sections 5K2.0, 5K2.7, 5K2.8 or 5.K2.9 (2010).

Sentences for perjury convictions are governed by 2J1.3(a)(2010) or Section 2J1.3(c) of the United States Sentencing Guidelines. Where perjury is "in respect to a criminal offense," however, it instructs that the defendant be sentenced pursuant to § 2X3.1 as if she were an "Accessory After the Fact" to that criminal offense. *Id*. at § 2J1.3(c)." *United States v. Knight*, 700 F.3d 59, 62 (3d Cir.2012). As stated above, the underlying criminal offense, or the object of the perjury was immigration fraud. Additionally, the jury verdict in this case is a general verdict of guilty as to the two counts of perjury and it is not specific as to what the "criminal offense" was the underlying offense.

In *United States v. Munyenzezi*, 781 F.3d 532, 544 (1st Cir. 2015), the defendant, Beatrice Munyenyezi, a Hutu, was the wife of a hotel owner in Rwanda. She was also a high-powered minister in Rwanda's MRND government, who was responsible for killing much of the Tutsi people, as much as 100,000,000 people. In 1995 the Munyenyezi fled to Kenya in hopes of coming to the United States as a refugee. She filled out an immigration form I-590 and stated that she was not involved in any political, professional or social organizations. She also stated on the form that she had not committed a crime of moral turpitude nor persecuted people on grounds of race, religion or politics. She denied her involvement in the genocide. The United States

government approved her papers in 1996 and she soon after moved to the United States. In 2003 the defendant applied for naturalization as an American citizen. She declared that the answers in her form N-400 were truthful. In the form she denied that she had ever been a member of any organization, party, club or the like, never done a crime leading to her arrest or conviction and lastly never lied to or misled federal officials to get immigration benefits. She later became a naturalized citizen.

In 2010, federal prosecutors indicted Munyenyezi on two counts of procuring citizenship illegally by making false statements to the government. She was ultimately convicted and sentenced to two concurrent 120 month prison terms. On appeal, Munyenyezi challenged the reasonableness of her sentence among other things. The First Circuit Court of Appeals affirmed.

Despite the fact that the advisory guideline range in Munyenyezi's case was 0-6 months[2] the Judge sentenced her to the maximum terms permitted by the statue.

It should first be noted that the Court in *Munyenyezi* denied the Government's upward departure under 5K.2.8, which allows a judge to depart upward if he finds "the defendant's conduct was unusually heinous, cruel, brutal or degrading to the victim." U.S.S.G §5K2.8 (2016). Second, it should be noted that the Judge in *Munyenyezi* did not apply section 2L2.2 because of *ex post facto* concerns. The Judge agreed to not punish Munyenyezi for genocidal conduct, but imposed a significant punishment because her lies were very serious infractions of U.S.C. 1425, Procuring Citizenship Illegally by Making False Statements to the Government. The Judge stressed that Munyenyezi was "not accountable in this Court" for her genocidal acts. However, she was held accountable for lying to obtain refugee and citizenship for which she was not qualified. The Judge sentenced her to the statutory maximum based on section 3553(a) factors

---

[2] The guideline range was recommended by probation and adopted by the Judge.

such as protecting the community, deterring criminal wrongdoing, promoting respect for the law and providing a just punishment.

In Mr. Jabateh's case, the evidence of war time crimes consisted of testimony from approximately fifteen witnesses. None of the witnesses complained promptly, and in fact most complained for the first time over ten years after being victimized. All of the witnesses were located and interviewed by Global Justice - not the U.S. Department of Justice. Many of the witnesses were identified with tribes and or political parties during the Liberian Civil War that were enemies of ULIMO-K of which Mr. Jabateh was a commanding officer. All of the witnesses identified Mr. Jabateh from a photograph in which he is easily identifiable. There was not a single piece of forensic evidence presented at trial corroborating that Mr. Jabateh committed acts of genocide.

The Court should deny the Government's upward departure under 5K.2.8 under *Munyenyezi*. *U.S.S.G §5K2.8 (2016)*. As stated above the Court in *Munyenyezi* denied the government's request for an upward departure under 5K.2.8 Further, the Court in *Munyenyezi* also did not depart upwards under 5K2.0. The Court in *Munyenyezi* did not even contemplate departures under 5K2.7, or 5K2.9 (2010), thus this Court should also not consider them. Therefore, the Court in Mr. Jabateh's case should not depart upward under any of the mentioned sections.

### III. JANUARY 24, 2018; QUESTION 3:

> **Whether: (a) I may, in determining whether to impose an upward variance from the Sentencing Guidelines, consider Defendant's commission of genocidal acts that form the basis of his convictions under 18 U.S.C. Sections 1546(a) and 1621; and (b) I should impose an upward departure from the Guidelines pursuant to USSG Sections 5K2.0, 5K2.7, 5K2.8, or 5K2.9 (2010). The parties shall address whether and how the answers to these questions are affected by whether I sentence Defendant pursuant to USSG Section 2J1.3(a)(2010) or Section 2J1.3(c).**

In determining whether to impose an upward departure from the Sentencing Guidelines the Court may not consider the commission of genocidal acts that form the basis of the convictions under 18 U.S.C. Sections 1546(a) and 1621 if the Court finds that conduct has not been proven by a preponderance of the evidence. *U.S. v. Watts*, 519 U.S. 148, 149-54 (1997). The commission of genocidal acts were not proven by a preponderance of the evidence at trial and the Court should not impose an upward departure under U.S.S.G. Sections 5K2.0, 5K2.7 or 5.K2.9 (2010).

Sentences for perjury convictions are governed by 2J1.3(a)(2010) or Section 2J1.3(c) of the United States Sentencing Guidelines. "Where perjury is "in respect to a criminal offense," however, it instructs that the defendant be sentenced pursuant to § 2X3.1 as if she were an "Accessory After the Fact" to that criminal offense. *Id*. at § 2J1.3(c)." *United States v. Knight*, 700 F.3d 59, 62 (3d Cir.2012). As stated above, the jury verdict in this case is a general verdict of guilty as to the two counts of perjury and it is not specific as to what the "criminal offense" was the underlying offense.

In *United States v. Munyenzezi*, 781 F.3d 532, 544 (1st Cir. 2015), the defendant, Beatrice Munyenyezi, a Hutu, was the wife of a hotel owner in Rwanda. She was also a high-powered minister in Rwanda's MRND government, who was responsible for killing much of the Tutsi people, as much as 100,000,000 people. In 1995 the Munyenyezi fled to Kenya in hopes of coming to the United States as a refugee. She filled out an immigration form I-590 and stated that she was not involved in any political, professional or social organizations. She also stated on the form that she had not committed a crime of moral turpitude nor persecuted people on grounds of race, religion or politics. She denied her involvement in the genocide. The United States government approved her papers in 1996 and she soon after moved to the United States. In 2003

the defendant applied for naturalization as an American citizen. She declared that the answers in her form N-400 were truthful. In the form she denied that she had ever been a member of any organization, party, club or the like, never done a crime leading to her arrest or conviction and lastly never lied to or misled federal officials to get immigration benefits. She later became a naturalized citizen.

In 2010, federal prosecutors indicted Munyenyezi on two counts of procuring citizenship illegally by making false statements to the government. She was ultimately convicted and sentenced to two concurrent 120 month prison terms. On appeal, Munyenyezi challenged the reasonableness of her sentence among other things. The First Circuit Court of Appeals affirmed.

Despite the fact that the advisory guideline range in Munyenyezi's case was 0-6 months[3] the Judge sentenced her to the maximum terms permitted by the statue.

It should first be noted that the Court in *Munyenyezi* denied the Government's upward departure under 5K.2.8, which allows a judge to depart upward if he finds "the defendant's conduct was unusually heinous, cruel, brutal or degrading to the victim." U.S.S.G §5K2.8 (2016). Second, it should be noted that the Judge in *Munyenyezi* did not apply section 2L2.2 because of *ex post facto* concerns. The Judge agreed to not punish Munyenyezi as punishment for genocidal conduct, but because her lies were the most serious infractions of U.S.C. 1425, Procuring Citizenship Illegally by Making False Statements to the Government that one can describe. The Judge stressed that Munyenyezi was "not accountable in this Court" for her genocidal acts. However, she was held accountable for lying to obtain refugee and citizenship for which she was not qualified. The Judge sentenced her to the statutory maximum based on section 3553(a) factors such as protecting the community, deterring criminal wrongdoing, promoting respect for the law and providing a just punishment.

---

[3] The guideline range was recommended by probation and adopted by the Judge.

In Mr. Jabateh's case, the evidence of war time crimes consisted of testimony from approximately fifteen witnesses. None of the witnesses complained promptly, and in fact most complained over ten years after being victimized. All of the witnesses were located and interviewed by Global Justice - not the Department of Justice. Many of the witnesses were identified with tribes and or political parties during the Liberian Civil War that were enemies of ULIMO-K of which Mr. Jabateh was a commanding officer. All of the witnesses identified Mr. Jabateh from a photograph in which he is easily identifiable. There was not a single piece of forensic evidence presented at trial corroborating that Mr. Jabateh committed acts of genocide.

The Court should deny the Government's upward variances under 5K.2.8 under *Munyenyezi*. *U.S.S.G §5K2.8 (2016)*. As stated above the Court in *Munyenyezi* denied the government's request for an upward variance under 5K.2.8 Further, the Court in *Munyenyezi* also did not impose an upward variance under 5K2.0. The Court in *Munyenyezi* did not even contemplate variances under 5K2.7, or 5K2.9 (2010), thus this Court should also not consider them. Therefore, the Court in Mr. Jabateh's case should not impose an upward variance under any of the mentioned sections.

**IV. FEBRUARY 6, 2018; QUESTION 4:**

**Whether I may rely on transcripts and my own recollection of the trial testimony in finding facts at sentencing by a preponderance of the evidence that were not necessarily found by the jury;**

The Court is permitted to rely on transcripts and its own recollection of the trial testimony in finding facts at sentencing by a preponderance of the evidence that were not necessarily found by the jury. Mr. Jabateh acknowledges that the verdict itself and the facts necessarily implied by that verdict are binding on a court for sentencing purposes. *United States v. Boggi*, 74 F.3d 470, 478–479 (3d Cir.1996). However, a court is not bound by testimony

simply because it came from a witness the jury believed in some — or, indeed, more than some — respects. *United States v. Haut*, 107 F.3d 213, 221 (3d Cir.1997).

## V. FEBRUARY 6, 2018; QUESTION 5:

**If I find that Defendant committed the atrocities described in Paragraphs Six through Thirty-Six of the PSR, whether the *Ex Post Facto* Clause nonetheless precludes me from considering Defendant's human rights violations in light of the amendments to § 2L2.2(b)(4) and the Parties' agreement that I must apply the 2010 edition of the Guidelines.**

The criminal conduct underlying Mr. Jabateh's conviction occurred from 1991 to 1995. Under the version of the U.S.S.G. §1B.1.11 in effect on the date of Mr. Jabateh's criminal conduct, his base level is a fourteen (14) and his guideline range for imprisonment is fifteen (15) to twenty one (21) months.. Effective 2016, under U.S.S.G. §2L2.2 of the 2016 Sentencing Guidelines, the defendant's total offense level would be twenty five (25), and his guideline range for imprisonment would be fifty-seven (57) to seventy-one (71) months. The 2010 version of the guidelines, which governs Mr. Jabateh's conduct, does not take into consideration human rights offenses.

In *Miller v. Florida*, 482 U.S. 423, 431–35, 107 S.Ct. 2446, 2451– 54, 96 L.Ed.2d 351 (1987), the Court held that where an amendment to a section of the sentencing guidelines occurs following the convicted offense conduct and the amendment results in harsher penalties than were in effect at the time of the conduct, the ex post facto clause and U.S.S.G §1B1.11(a) both require the District Court to apply the sentencing guidelines in effect on the date of that offense.

In *U.S. v. Larkin*, 629 F.3d 177 (2010), the appellant's criminal conduct underlying appellant's indictment occurred on September 15, 2003. The appellant's base offense was a twenty-seven (27) under the version of the U.S.S.G §2G2.1 (2002), which was in effect on the date of the appellant's criminal conduct. The United States Sentencing Commission amended

U.S.S.G. §2G2.1 in November of 2004 to include several bases for enhancements. Taking into consideration the amendment, resulted in the appellant's base offense level being a thirty two (32). The appellant was sentenced and on appeal claimed that the District Court had improperly relied on the 2009 edition of the Sentencing Guideline manual in rendering a decision to depart upward five levels pursuant to U.S.S.G. §5K2.0 in violation of the *ex post facto* clause of Article I of the United States Constitution.

The Court ruled that the District Court appropriately considered the appellant's conduct under the 2002 edition of the Guidelines Manuel and concluded that an upward departure was warranted pursuant to U.S.S.G §5K2.0, on the basis that U.S.S.G. 2G2.1(2002) did not consider the severity of appellant's conduct. Thus, the Court must apply the 2010 edition of the United States Sentencing Guidelines. If the Court determines that human rights violations were proven at trial by a preponderance of the evidence, the Court may consider the amendments to § 2L2.2(b)(4), but must should not rely on the amended version. *See United States v. Kikumura,* 918 F.2d 1084, 1113 (3d Cir.1990) *overruled on other grounds by United States v. Fisher,* 502 F.3d 293 (3d Cir.2007) (analogies to other guidelines is permissible).

## VI. FEBRUARY 6, 2018; QUESTION 6:

**Assuming that I may consider those atrocities for sentencing purposes, in precisely what manner may I consider those atrocities in determining whether to impose an upward departure pursuant §§ 4A1.3 and 5K2.0. Specifically, whether I may consider those atrocities: (a) independently of Defendant's convictions for perjury and fraud in immigration documents; or (b) *only* insofar as they increase the culpability of his lies and immigration fraud; and**

In determining whether to impose an upward departure from the Sentencing Guidelines the Court may not consider the commission of genocidal acts that form the basis of the

convictions under 18 U.S.C. Sections 1546(a) and 1621 if the Court finds that conduct has not been proven by a preponderance of the evidence. *U.S. v. Watts*, 519 U.S. 148, 149-54 (1997).

Sentences for perjury convictions are governed by 2J1.3(a)(2010) or Section 2J1.3(c) of the United States Sentencing Guidelines. "Where perjury is "in respect to a criminal offense," however, it instructs that the defendant be sentenced pursuant to § 2X3.1 as if she were an "Accessory After the Fact" to that criminal offense. *Id*. at § 2J1.3(c)." *United States v. Knight*, 700 F.3d 59, 62 (3d Cir.2012). As stated above, the jury verdict in this case is a general verdict of guilty as to the two counts of perjury and it is not specific as to what the "criminal offense" was that was the underlying offense.

In *United States v. Munyenzezi*, 781 F.3d 532, 544 (1st Cir. 2015), the defendant, Beatrice Munyenyezi, a Hutu, was the wife of a hotel owner in Rwanda. She was also a high-powered minister in Rwanda's MRND government, who was responsible for killing much of the Tutsi people, as much as 100,000,000 people. In 1995 the Munyenyezi fled to Kenya in hopes of coming to the United States as a refugee. She filled out an immigration form I-590 and stated that she was not involved in any political, professional or social organizations. She also stated on the form that she had not committed a crime of moral turpitude nor persecuted people on grounds of race, religion or politics. She denied her involvement in the genocide. The United States government approved her papers in 1996 and she soon after moved to the United States. In 2003 the defendant applied for naturalization as an American citizen. She declared that the answers in her form N-400 were truthful. In the form she denied that she had ever been a member of any organization, party, club or the like, never done a crime leading to her arrest or conviction and lastly never lied to or misled federal officials to get immigration benefits. She later became a naturalized citizen.

In 2010, federal prosecutors indicted Munyenyezi on two counts of procuring citizenship illegally by making false statements to the government. She was ultimately convicted and sentenced to two concurrent 120 month prison terms. On appeal, Munyenyezi challenged the reasonableness of her sentence among other things. The First Circuit Court of Appeals affirmed.

Despite the fact that the advisory guideline range in Munyenyezi's case was 0-6 months[4] the Judge sentenced her to the maximum terms permitted by the statue.

It should first be noted that the Court in *Munyenyezi* denied the Government's upward departure under 5K.2.8, which allows a judge to depart upward if he finds "the defendant's conduct was unusually heinous, cruel, brutal or degrading to the victim." U.S.S.G §5K2.8 (2016). Second, it should be noted that the Judge in *Munyenyezi* did not apply section 2L2.2 because of *ex post facto* concerns. The Judge agreed to not punish Munyenyezi as punishment for genocidal conduct, but because her lies were the most serious infractions of U.S.C. 1425 Procuring Citizenship Illegally by Making False Statements to the Government that one can describe. The Judge stressed that Munyenyezi was "not accountable in this Court" for her genocidal acts. However, she was held accountable for lying to obtain refugee and citizenship for which she was not qualified. The Judge sentenced her to the statutory maximum based on section 3553(a) factors such as protecting the community, deterring criminal wrongdoing, promoting respect for the law and providing a just punishment.

In Mr. Jabateh's case, the evidence of war time crimes consisted of testimony from approximately fifteen witnesses. None of the witnesses complained promptly, and in fact most complained over ten years after being victimized. All of the witnesses were located and interviewed by Global Justice. Many of the witnesses were identified with tribes and or political parties during the Liberian Civil War that were enemies of ULIMO-K of which Mr. Jabateh was

---

[4] The guideline range was recommended by probation and adopted by the Judge.

a commanding officer. All of the witnesses identified Mr. Jabateh from a photograph in which he is easily identifiable. There was not a single piece of forensic evidence presented at trial corroborating that Mr. Jabateh committed acts of genocide.

The Court in *Munyenyezi* did not depart upwards under 5K2.0. Further, the Court in *Munyenyezi* did not even contemplate a departure under 4A1.3 (2010), therefore this Court should also not consider it.

### VII. FEBRUARY 6, 2018; QUESTION 7:

**If I find that Defendant committed the atrocities described in Paragraphs Six through Thirty-Six of the PSR, in precisely what manner may I consider those atrocities in determining whether to impose an upward variance. Specifically, whether I may consider those atrocities: (a) independently of Defendant's convictions for perjury and fraud in immigration documents; or (b) *only* insofar as they increase the culpability of his lies and immigration fraud.**

In determining whether to impose an upward departure from the Sentencing Guidelines the Court may not consider the Defendant's commission of genocidal acts that form the basis of his convictions under 18 U.S.C. Sections 1546(a) and 1621 if the Court finds that conduct has not been proved by preponderance of the evidence. *U.S. v. Watts*, 519 U.S. 148, 149-54 (1997).

Sentences for perjury convictions are governed by 2J1.3(a)(2010) or Section 2J1.3(c) of the United States Sentencing Guidelines. "Where perjury is "in respect to a criminal offense," however, it instructs that the defendant be sentenced pursuant to § 2X3.1 as if she were an "Accessory After the Fact" to that criminal offense. *Id*. at § 2J1.3(c)." *United States v. Knight*, 700 F.3d 59, 62 (3d Cir.2012). As stated above, the jury verdict in this case is a general verdict of guilty as to the two counts of perjury and it is not specific as to what the "criminal offense" was that was the underlying offense.

In *United States v. Munyenzezi*, 781 F.3d 532, 544 (1st Cir. 2015), the defendant, Beatrice Munyenyezi, a Hutu, was the wife of a hotel owner in Rwanda. She was also a high-powered minister in Rwanda's MRND government, who was responsible for killing much of the Tutsi people, as much as 100,000,000 people. In 1995 the Munyenyezi fled to Kenya in hopes of coming to the United States as a refugee. She filled out an immigration form I-590 and stated that she was not involved in any political, professional or social organizations. She also stated on the form that she had not committed a crime of moral turpitude nor persecuted people on grounds of race, religion or politics. She denied her involvement in the genocide. The United States government approved her papers in 1996 and she soon after moved to the United States. In 2003 the defendant applied for naturalization as an American citizen. She declared that the answers in her form N-400 were truthful. In the form she denied that she had ever been a member of any organization, party, club or the like, never done a crime leading to her arrest or conviction and lastly never lied to or misled federal officials to get immigration benefits. She later became a naturalized citizen.

In 2010, federal prosecutors indicted Munyenyezi on two counts of procuring citizenship illegally by making false statements to the government. She was ultimately convicted and sentenced to two concurrent 120 month prison terms. On appeal, Munyenyezi challenged the reasonableness of her sentence among other things. The First Circuit Court of Appeals affirmed.

Despite the fact that the advisory guideline range in Munyenyezi's case was 0-6 months[5] the Judge sentenced her to the maximum terms permitted by the statue.

It should first be noted that the Court in *Munyenyezi* denied the Government's upward departure under 5K.2.8, which allows a judge to depart upward if he finds "the defendant's conduct was unusually heinous, cruel, brutal or degrading to the victim." U.S.S.G §5K2.8

---

[5] The guideline range was recommended by probation and adopted by the Judge.

(2016). Second, it should be noted that the Judge in *Munyenyezi* did not apply section 2L2.2 because of *ex post facto* concerns. The Judge agreed to not punish Munyenyezi as punishment for genocidal conduct, but because her lies were the most serious infractions of U.S.C. 1425, Procuring Citizenship Illegally by Making False Statements to the Government that one can describe. The Judge stressed that Munyenyezi was "not accountable in this Court" for her genocidal acts. However, she was held accountable for lying to obtain refugee and citizenship for which she was not qualified. The Judge sentenced her to the statutory maximum based on section 3553(a) factors such as protecting the community, deterring criminal wrongdoing, promoting respect for the law and providing a just punishment.

In Mr. Jabateh's case, the evidence of war time crimes consisted of testimony from approximately fifteen witnesses. None of the witnesses complained promptly, and in fact most complained over ten years after being victimized. All of the witnesses were located and interviewed by Global Justice. Many of the witnesses were identified with tribes and or political parties during the Liberian Civil War that were enemies of ULIMO-K of which Mr. Jabateh was a commanding officer. All of the witnesses identified Mr. Jabateh from a photograph in which he is easily identifiable. There was not a single piece of forensic evidence presented at trial corroborating that Mr. Jabateh committed acts of genocide.

The Court should deny the Government's upward departure under 5K.2.8, which allows a judge to depart upward if he finds "the defendant's conduct was unusually heinous, cruel, brutal or degrading to the victim," under *Munyenyezi, U.S.S.G §5K2.8 (2016)*. Second, the Court should not apply section 2L2.2 because of *ex post facto* concerns. Lastly, the Court should not punish Mr. Jabateh for any of the ten crimes listed in the indictment. As noted above the Court in

*Munyenyezi* agreed to not punish her as punishment for genocidal conduct, thus Mr. Jabateh should not be punished for any of the crimes listed in the indictment.

## VIII. CONCLUSION

It is requested that the Court especially consider the guideline range under the 2010 version of the Sentencing Guidelines and not impose an upward variance or departure based on the arguments set forth above.

Respectfully Submitted,

_____/s/,_____

Gregory J. Pagano, Esquire
Attorney for Mohammed Jabateh

Date: February 14, 2018