# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **No. 2:16-CR-88-PD** |
| MOHAMMED JABBATEH, | : | **No. 2:22-CV-** |
| Defendant-Movant. | : | |

## DEFENDANT'S MEMORANDUM OF LAW IN AID OF
## PRELIMINARY DETERMINATION UNDER § 2255 RULE 4(b)

Contemporaneously with this Memorandum, the defendant, Mohammed Jabateh,[1] has filed a counseled motion under 28 U.S.C. § 2255 to vacate his convictions and sentence on Counts One and Two, on the basis that his convictions are predicated on a legally erroneous understanding of the offense charged in those counts. The conduct described in the indictment and for which he was convicted and sentenced does not constitute the offense charged in those counts. It is the law of the case, as held by the Third Circuit on direct appeal, that the defendant is correct in his position on this point. See *United States v. Jabateh*, 974 F.3d 281, 291–97 (3d Cir. 2020). Accordingly, Mr. Jabateh will be entitled to a remedy under § 2255 to the extent of vacating his convictions and sentences on Counts One and Two.

The defendant's motion articulates three alternative legal bases for granting him relief under § 2255 from these improper convictions and the resulting increased sentence: (1) that he is being held (on those counts) in violation of the laws of the United States, because his convictions do not properly rest on proof of the elements of

---

[1] "Jabateh" is the correct spelling of the defendant's surname. The indictment is based on a misnomer. The caption was corrected on appeal by the Third Circuit.

-1-

the offense charged; (2) that the judgment of conviction and sentence, as to Counts One and Two, deprives him for the same reason of liberty without due process, in violation of the Fifth Amendment, in that he is (legally) "actually innocent" of those charges; and (3) that he did not enjoy the effective assistance of counsel at, before, and after trial insofar as his then-counsel failed to recognize the invalidity of the indictment on these counts, that is, the fundamental mismatch between the indictment's legal accusation and its factual allegations. Counsel therefore failed to take any action to enforce the defendant's right not to be improperly convicted and sentenced. This memorandum serves as defendant's initial brief in support of the § 2255 motion, *see* LCR 7.1(c), and seeks an order to the government to file a response to the motion pursuant to Fed.R. Gov. §2255 Proc. 4(b).

    Under the § 2255 statute and governing rules, this Court must make a preliminary review of the motion and then direct that a fact-specific response be filed, "[u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). See *Fontaine v. United States*, 411 U.S. 213 (1973) (per curiam); *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). The statutory standard is enforced through § 2255 Rule 4(b), which provides that if the motion is not summarily dismissed, the Court should "order the United States to file an answer, motion, or other response within a fixed time." The motion in this case, drafted and filed by counsel, closely follows the standard AO and District form, as suggested by LCR 9.3(a).[2] It states three Grounds, all premised on the

---

[2] The defendant, in his motion and memorandum, does not elect to anticipate or address potential affirmative defenses or other non-jurisdictional issues which are for the government to raise or waive, as it chooses. See *Gray v. Netherland*, 518 U.S. 152, 165 (1996)

same simple proposition: that the government's theory of the case on Counts One and Two was invalid as a matter of law, that is, the conduct alleged in those counts (certain oral representations made under oath to an immigration officer in 2011) did not constitute a violation of the offense charged in those counts, 18 U.S.C. § 1546(a)(¶4). Because this contention provides (at least arguably, at this stage) a basis for relief from the convictions and two consecutive ten-year sentences imposed on those counts, under any or all of the three legal grounds set forth in the motion, the Court should direct that an answer be filed, allow a reply (*see* § 2255 Rule 5(d)), and then, upon full hearing if needed, grant the requested relief.

Background. Following a jury trial, defendant-movant Mohamed Jabateh, an immigrant from Liberia, was convicted in this Court on four counts – two under each of two different statutes – for knowingly making false statements under oath in an official interview in 2011 with an officer of the U.S. Customs and Immigration Service. The interview consisted, in pertinent part, of reading Mr. Jabatteh the same questions he had previously answered in a pending application, filed in 2001, to become a lawful permanent resident of the United States. During the sworn oral

_____(footnote continued)

(procedural default is an affirmative defense); *United States v. Bendolph*, 409 F.4th 155, 160 (3d Cir. 2005), discussing *Long v. Wilson*, 393 F.3d 390 (3d Cir. 2004) (AEDPA statute of limitations is affirmative defense). The movant notes, however, that his motion is timely, and that if any assertion of "procedural default" were to be made, it would be overcome in this case not only by ineffective assistance of trial counsel, but also by his "actual innocence" (in the legal sense), as to Counts One and Two, of the charged offense. See *United States v. Davies*, 394 F.3d 182, 191–96 (3d Cir. 2005). To be "actually innocent" in this sense, a defendant need not be free from moral fault, nor can the claim be defeated by accusing him now of some other crime with which he might have been (but was not in fact) charged in challenged counts. *Id.* 194 n.9.

interview, Mr. Jabateh, who had previously been granted asylum, affirmed the responses he had made in writing and under oath some ten years earlier.

The defendant's 2011 oral affirmation of his 2001 written statements concerned, in relevant part, his role and actions during the Liberian Civil War of 1989–1997. The government claimed that some of his responses were materially false, either affirmatively or by omission. The indictment, returned in 2016, alleged that each of two oral statements had violated both 18 U.S.C. § 1546(a), an immigration fraud statute, and 18 U.S.C. § 1621(a), the general federal perjury statute.

Counts One and Three both claimed that Mr. Jabateh had lied under oath when he affirmed orally in 2011 his earlier answer of "no" to the question:

> Have you ever engaged in genocide, or otherwise ordered, incited, assisted or otherwise participated in the killing of any person because of race, religion, nationality, ethnic origin or political opinion?

Indictment, at 9, 10, 12. Counts Two and Four claimed that Mr. Jabateh had lied under oath during the same interview when he affirmed his answer in the negative:

> Are you under a final order of civil penalty for violating section 274C of the Immigration and Nationality Act for use of fraudulent documents or have you, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, or entry into the U.S. or any immigration benefit?

Indictment, at 9, 11, 13. The undisclosed procurement of status by "willful misrepresentation" underlying these last two counts, according to the indictment, was that Mr. Jabateh had obtained asylum (in 1999) by providing materially false and incomplete information. The indictment did not (and could not, given the passage of time) allege that he had committed an offense in 1999 or 2001 when he completed the written applications. All four counts allegedly were committed during his 2011 interview.

-4-

To further identify the misrepresentations that Mr. Jabateh allegedly made to procure asylum (and then failed to disclose in 2011), Counts Two and Four referred to certain of the defendant's statements and omissions during the application process:

> 29. On or about December 7, 1998, defendant MOHAMMED JABBATEH,[3] a/k/a "Jungle Jabbah," when making application for asylum, referred immigration officials to his personal statement in which he did not reveal his positions in ULIMO and ULIMO-K as a commander or higher ranking officer, or his activities in those positions.
>
> 30. On or about January 11, 1999, during the asylum seeking process, defendant MOHAMMED JABBATEH, a/k/a "Jungle Jabbah," was interviewed by an immigration asylum officer for purposes of determining whether JABBATEH's application should be granted. To this end JABBATEH falsely responded "no" to the following two queries: 1) "[H]ave you ever committed a crime?"; and 2) "[H]ave you ever harmed anyone else?"

Indictment, at 8–9.[4] Mr. Jabateh's then-defense counsel did not contest the indictment's application of § 1546(a) to oral statements. He neither moved pretrial to dismiss Counts One and Two nor sought a judgment of acquittal at or after trial on that basis.

Most of Mr. Jabateh's 10-day trial consisted of testimony from eye witnesses, brought over by the government from Liberia, who described various atrocities and human rights abuses that they said they had observed or suffered during the Civil War some 20 or more years earlier. Several of those witnesses identified Mr. Jabateh as

---

[3] As already noted, the indictment mistakenly spells the movant's surname with two Bs.

[4] The indictment does not go on to specify what "crime," under what body of law, Mr. Jabateh allegedly knew he had in fact committed, nor what sort of non-criminal "harm" to others he should have known to disclose. *Cf. Maslenjak v. United States*, 582 U.S. 335, 137 S.Ct. 1918, 1927 (2017) (calling attention to similar, but narrower "crime" question in application for naturalization as a "meager basis" for a criminal charge that would give prosecutors "nearly limitless leverage" and would-be citizens "precious little security").

being the same person they knew during the war as "Jungle Jabbah," a particularly ruthless and cruel commander in the ULIMO-K forces, which fought against other factions along complex and shifting political, ethnic and religious lines. *See generally* Luca Renda, *Ending Civil Wars: The Case of Liberia*, 23 FLETCHER FORUM OF WORLD AFFAIRS 59, 61–66 (Fall 1999) (available on WestLaw at 23-FALL FLFWA 59). Mr. Jabateh's defense was a denial of this behavior, claiming that the witnesses were misidentifying him, either in good faith or deliberately and maliciously.

This Court's jury instructions only alluded indirectly to the statute's requirement that the false statements alleged in Counts One and Two must have been made "in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder." 18 U.S.C. § 1546(a).[5] Trial counsel did not object to the instruction or propose a different one.

The jury returned verdicts of guilty on all four counts. In April 2018, this Court imposed sentence. The Court imposed maximum terms on all counts, running consecutively. The total sentence was thus 30 years' imprisonment, consisting of 10 years on each of the § 1546(a) counts and five more on each § 1621(a) perjury count. Sent.Tr. (4/19/18), at 12–13, 34.

On appeal, the Third Circuit affirmed. *United States v. Jabateh*, *supra*. The panel unanimously agreed with Mr. Jabateh that the invocation of the fourth paragraph

---

[5] This Court read Count One to the jury, including the averment that March 11, 2011 (the date of Mr. Jabateh's oral interview) was the date when the offense was allegedly committed. Tr. (10/17/17), at 118. It then instructed the jury that to be guilty, the defendant must have made a false statement "as alleged in the indictment." *Id.* 119. The same instruction was given for Count Two. *Id.* 120–21.

of § 1546(a) to support Counts One and Two was legally wrong. That statute, properly interpreted, concerns only false statements in sworn documents, not oral falsehoods, the Court recognized. The panel relied first and foremost on the plan language of the statute. It also explored other tools of statutory construction, and examined every argument proffered by the government,[6] but found no basis to hold otherwise. 974 F.3d at 291–97. The panel reached not just what it repeatedly called the "best reading" of § 1546(a) (*see* 974 F.3d at 288, 295, 297, 299), but the *only* proper reading, absent "re-writing Congress's work" or adopting an application of the law that would be "'unmoor[ed]' from the text." *Id*. 296, quoting *Maslenjak*, 137 S.Ct. at 1927.

Yet the Court of Appeals affirmed the convictions and sentence. The Court held that this error – which resulted in Mr. Jabateh's conviction for two counts of an offense he unambiguously did not commit, and the imposition on that basis of an added 20 years of imprisonment – was not "plain" within the meaning of Fed.R.Crim.P. 52(b). 974 F.3d at 298–300. The court of appeals ruled that "a new issue of interpretation, where only a close interpretative inquiry reveals the best reading" of a statute, cannot be a "clear, plain" error "under controlling decisions of Federal [Criminal Procedure] Rule 52(b)." *Id*. 299. While recognizing that conviction for what is not an offense, like conviction for an offense that is not charged, violates the Constitution, the court

---

[6] Many of the arguments advanced on appeal by the government were specious at best. For example, the prosecutor argued that an "application" might be made orally, while disregarding that the word "application" appears in the statute in a list that concludes with "or other document." Much of the appellate opinion consists of patiently, but briskly, disposing of such arguments. *E.g*., 974 F.3d at 292–93, citing *Logan v. United States*, 552 U.S. 23, 31 (2007). Moreover, in post-argument supplemental briefing requested by the panel, the government abandoned several of the arguments it had advanced in its appellee brief or at oral argument.

concluded that the plain error rule commanded affirmance on direct appeal. Although "'[f]ew constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused.' *Dunn v. United States*, 442 U.S. 100, 106 (1979)," *Id*. 299–300, the Court held that "the limits on our review prescribed by the Supreme Court in Rule 52(b)" compelled it to affirm Mr. Jabateh's unconstitutional conviction and sentence. *Id*. 300.

Mr. Jabateh sought rehearing *en banc*. He contended that the panel's unprecedented decision was contrary to prior Third Circuit cases applying the "plain error" rule and to the most fundamental principles of due process in criminal cases. Nevertheless, relief was denied.[7] The Supreme Court denied certiorari on October 4, 2021. *See* 142 S.Ct. 73 (No. 20-1369). Mr. Jabeteh's conviction and sentence thus "became final" on that date. This timely § 2255 motion follows.

Argument:

**The Files and Records of this Case Do Not Conclusively Show that Defendant Jabateh Is Not Entitled to Relief on the Grounds Set Forth in his § 2255 Motion. The Government Should Therefore Be Ordered to Answer the Motion and Defend the Defendant's Imprisonment Under Judgments of Conviction and Sentence that the Third Circuit Held on Appeal to Be Legally Invalid.**

As noted in the introduction to this Memorandum, the governing statute and rule require that this Court review the defendant's motion and then direct that a fact-specific response be filed, "[u]nless the motion and the files and the records of the case

---

[7] Mr. Jabateh also filed a post-judgment motion in the court below to recall the mandate and reconsider the denial of rehearing in light of a subsequent Third Circuit *en banc* opinion. That motion was summarily denied.

conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). See *Fontaine v. United States*, 411 U.S. 213 (1973) (per curiam); *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). Since Mr. Jabateh's § 2255 more than meets this standard, the Court should "order the United States to file an answer, motion, or other response within a fixed time." Fed.R.Gov. §2255 Proc. 4(b).[8] In that same order, the Court should set the time allowed for the movant's reply. *See* 2255 Rule 5(d). A proposed form of order is being filed with the motion to facilitate this action.

    1.    *Invalid theory of the case*.  Defendant Jabeteh was charged in Counts One and Two under 18 U.S.C. § 1546(a)(¶4) with making false material statements under oath to a USCIS inspector in an oral interview conducted in 2011. But the statute does not cover that conduct, as the Third Circuit held. In short, it is now settled – the law of the case – that "the text of 18 U.S.C. § 1546(a) cannot be read to reach the conduct charged by the Government in Counts One and Two." 974 F.3d at 291. That the Court of Appeals also held, as a procedural matter, that it could not grant relief on direct appeal under its understanding of the plain error rule, Fed.R.CrimP. 52(b), has no bearing on the present application. The plain error rule does not establish a standard of review applicable to § 2255 motions. See *United States v. Frady*, 456 U.S. 152 (1982).

    The conduct proved at trial, which is the factual scenario alleged in the indictment, did not violate the immigration fraud statute under which Counts One and Two

---

[8] The Court may also, at the same time or even prior to its preliminary review, consider whether it wishes to refer the motion initially to a United States Magistrate Judge for a Report and Recommendation. *See* LCR 72.1(I)(b).

were brought. A conviction based on a legally invalid theory of the case is a fundamental violation of the laws of the United States which can and must be corrected by motion under 28 U.S.C. § 2255.  *Bousley v. United States*, 523 U.S. 614 (1998); *Davis v. United States*, 417 U.S. 333 (1974); *United States v. Davies*, 394 F.3d 182, 191–96 (3d Cir. 2005) (even a defendant convicted on a guilty plea for conduct later shown not to satisfy a correct understanding of offense may have relief under § 2255; treating claim as a species of "actual innocence" to overcome government's claim of procedural default); *United States v. Garth*, 188 F.3d 99 (3d Cir. 1999); *United States v. Lloyd*, 188 F.3d 184 (3d Cir. 1999); *cf. United States v. Osser*, 864 F.2d 1056 (3d Cir. 1988) (similar attack may not succeed under *coram nobis*, outside scope of § 2255). In *Davis*, the defendant had raised unsuccessfully on appeal the precise issue that the Supreme Court later held afforded him a valid basis for § 2255 relief. See *United States v. Bansal*, No. 05-CR-193-2-PD , 2015 WL 11017834, *2 (E.D.Pa., June 22, 2015) (recognizing *Davis* exception to rule that §2255 motion ordinarily may not seek "to relitigate claims that were decided on direct appeal").

For these reasons, Ground One of the motion states at least a facially valid basis for relief under § 2255 which the Court should order the government to answer.

2. *Due Process Violation*.   There is no proposition more fundamental to the due process protection for liberty than "*nullum crimen sine lege*; *nulla poena sine lege*" (no crime can exist or punishment be inflicted without a legal foundation). The leading treatise calls this "basic premise of the criminal law" the "principle of legality." 1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 1.2(b), at 17 (3d ed. 2018). As held in *Montgomery v. Louisiana*, a sentence that the court lacks authority to

impose "is not just erroneous but contrary to law and, as a result, void." 577 U. S. 190, 203 (2016). As *Montgomery* came before the U.S. Supreme Court on review of a state supreme court's decision, its decision was necessarily of constitutional dimension.

This principle has deep roots not only in the Due Process Clause but also in the separation of powers. "Only the people's elected representatives in the legislature are authorized to 'make an act a crime.'" *United States* v. *Davis*, 588 U.S. —, 139 S.Ct. 2319, 2325 (2019) (quoting *United States* v. *Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34 (1812)). No court can authorize a criminal conviction and imprisonment for conduct that an applicable statute does not forbid. *United States v. Britton*, 108 U.S. 199, 206 (1883).

Particularly on federal collateral review, a court "has no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the conviction or sentence became final before the rule was announced." *Montgomery*, 577 U.S. at 203; *Holland v. Warden*, 998 F.3d 70, 76 (3d Cir. 2021) (claim of legal innocence, under proper construction of statute, is substantive and must be enforced retroactively under 28 U.S.C. § 2241, notwithstanding prior § 2255 filings). A fortiori, it affords a basis for mandatory § 2255 relief. See *Welch* v. *United States*, 578 U.S. 120, 136 S.Ct. 1257, 1268 (2016) (§ 2255 decision; "court lacks the power to exact a penalty that has not been authorized by [conviction under] any valid criminal statute"); *Davis*, 417 U.S. at 346–47 (if "Davis' conviction and punishment are for an act that the law does not make criminal" then "[t]here can be no room for doubt that such a

-11-

circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under § 2255.").[9]

A response should be ordered to Ground Two of the motion also.

3.  *Ineffective assistance of counsel at trial.*   As the Third Circuit noted, the construction of the statute underlying Counts One and Two that shows it applies only to false material statements, made under oath in written immigration documents, was apparent on a careful reading of § 1546(a)(¶4). The statute is not genuinely ambiguous. Compare *Davies*, 394 F.3d at 189–91.  It follows that defense counsel cannot have carefully and critically read the indictment against the cited statute, which is Job One for defense counsel in any federal criminal case.  No other inference is plausible. And the record is clear that counsel took none of the procedural steps that were appropriate to enforce his client's rights in that respect.  Had counsel done so, there is at least a reasonable probability that the motions or trial would have resulted in an outcome more favorable to Mr. Jabateh on Counts One and Two, and in particular to a sentence of ten years (at most) rather than 30. See *United States v. Arrington*, 13 F.4th 331, 335 (3d Cir. 2021); *United States v. Dunston*, No. 08-CR-289-PD, 2017 WL 11680395, *4 (E.D.Pa., July 24, 2017) (explicating standard for granting § 2255 relief on ineffective assistance grounds).

---

[9] See also *Fiore v. White*, 531 U.S. 225 (2001) (per curiam) (summarily reversing denial of federal habeas corpus relief to a state prisoner whose conviction rested on conduct that the state supreme court, applying the governing state rules of statutory construction, had *subsequently*, in another defendant's case, determined did not violate the charged statute); *Vachon v. New Hampshire*, 414 U.S. 478 (1974) (per curiam) (vacating conviction on direct appeal from state supreme court, notwithstanding that petitioner's failure to include the point in her Questions Presented, in light of conclusion that proof was lacking of any violation of the cited statute).

For these reasons, the motion pleads a plausible claim that Mr. Jabateh's generally more-than-capable counsel rendered prejudicially ineffective assistance at trial in failing to perceive the fundamental flaw in Counts One and Two or to object at any time to the legally invalid theory on which, as to those counts, this prosecution was based. Ground Three of the § 2255 motion, like the other two Grounds, provides a potential basis for relief that is not refuted by "the files and records of the case." For these reasons, the third Ground articulated in Mr. Jabateh's § 2255 motion is also at least facially valid, and calls for a response.

## Conclusion

For all the foregoing reasons, this Court should issue an order under Fed.R.Gov. § 2255 Proc. 4(b) directing the United States to answer this motion; and setting a date under Rule 5(d) for Reply.  Then, after such expansion of the record or hearing as may be appropriate, see *Arrington*, 13 F.4th at 334–35, the Court should vacate defendant Jabateh's judgment of conviction and sentence on Counts One and Two, or grant other relief to which he may be entitled.

Respectfully submitted,

Dated:  September 28, 2022

*s/Peter Goldberger*
By: PETER GOLDBERGER
50 Rittenhouse Place
Ardmore, PA  19003

(610) 649-8200

peter.goldberger@verizon.net

Counsel for the Movant

CERTIFICATE OF SERVICE

On September 28, 2022, I served a copy of the foregoing memorandum on the attorney for the United States, First Assistant U.S. Attorney Nelson S.T. Thayer, Jr., E.D.Pa., by ECF filing.

                                                __*s/Peter Goldberger*_____